# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ERIC MITTENTHAL, *an individual suing on behalf of himself and all others similarly situated*,<br><br>   Plaintiff,<br><br>v.<br><br>FLORIDA PANTHERS HOCKEY CLUB, LTD., *a Florida limited partnership*; PHGP LLC, *a Florida limited liability company;* JAKE SCHREIBER, *an individual*; DAVID BRUNSON, *an individual*,<br><br>   Defendants. | CLASS ACTION<br><br><br>CASE NO. _____ |

## CLASS ACTION COMPLAINT

Plaintiff Eric Mittenthal ("**Plaintiff**"), individually and on behalf of all other persons similarly situated, sues Defendants Florida Panthers Hockey Club, Ltd. and PHGP, LLC (collectively, "**Panthers**") and its corporate executives Jake Schreiber ("**Schreiber**") and David Brunson ("**Brunson**") who were directly involved in and oversaw the unlawful acts alleged herein (Schreiber and Brunson, collectively, the "**Executives**") (the Panthers and the Executives, collectively, "**Defendants**"). The following allegations are made on the basis of facts personally known to Plaintiff, the investigation done by his counsel, and upon information and belief.

## NATURE OF ACTION

1. Professional sports team owners critically depend on fan engagement to build team and brand loyalty, expand fan bases, fill stadium seats, maintain ratings, and sell apparel. Eager to stay on their fans' minds, team owners increasingly skirt their obligations under the Telephone

Consumer Protection Act, 47 U.S.C. § 227 ("**TCPA**") and deploy intrusive telephone marketing strategies to maintain the fan engagement upon which they rely. The Panthers are one such team.

2. Plaintiff brings this action for statutory damages and other legal and equitable remedies resulting from the illegal actions of the Panthers and its Executives in transmitting advertising and telemarketing text messages to Plaintiff's cellular telephone and the cellular telephones of numerous other similarly situated persons using an automatic telephone dialing system ("**ATDS**") and without anyone's prior express written consent, in violation of the TCPA.

## PARTIES

3. Plaintiff is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153(39), a citizen and resident of Miami, Florida, and the subscriber and user of the cellular telephone number (305) \*\*\*-0997 (the "**0997 Number**").

4. Defendant Florida Panthers Hockey Club, Ltd. is, and at all times relevant hereto was, a limited partnership organized under the laws of Florida and a "person" as defined by 47 U.S.C. § 153(39) that maintains its primary place of business and headquarters in Sunrise, Florida. Florida Panthers Hockey Club, Ltd. conducts business under the name "The Florida Panthers," which is the name of a professional hockey team which plays its home games in Sunrise, Florida.

5. Defendant PHGP LLC is, and at all times relevant hereto was, a limited liability company organized under the laws of Florida and a "person" as defined by 47 U.S.C. §153(39) that maintains its primary place of business and headquarters in Sunrise, Florida.  Defendant PHGP, LLC is the general partner of Defendant Florida Panthers Hockey Club, Ltd.

6. Schreiber is an individual who lives in the Miami/Fort Lauderdale area in Florida. His current job title is Marketing Coordinator of the Florida Panthers.

7. Brunson is an individual who lives in the Miami/Fort Lauderdale area in Florida. His current job title is Marketing Specialist of the Florida Panthers.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

9. This Court has subject matter jurisdiction over this action pursuant to 47 U.S.C. § 227(b)(3).

10. Panthers are subject to personal jurisdiction in Florida because their principal places of business are in Florida and their affiliations in Florida are so continuous that they are at home here. Not only are the Panthers identified by the name of this state (i.e., "The Florida Panthers") but the Panthers also play their home games in a stadium located in Florida.

11. Schreiber is subject to personal jurisdiction in Florida because he is a resident and citizen of Florida.

12. Brunson is subject to personal jurisdiction in Florida because he is a resident and citizen of Florida.

13. Defendants are additionally subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendants' contacts with this state. Defendants initiated and directed, or caused to be initiated and directed by its agent(s), telemarketing and/or advertising text messages into Florida via an ATDS and without obtaining the requisite prior express written consent, in violation of the TCPA. Specifically, Defendants initiated and directed, or caused to be initiated and directed by its agent(s), the transmission of unsolicited advertising or telemarketing SMS text messages to the 0997 Number to sell products and services in Florida. Plaintiff received such messages while residing in and physically present in Florida.

14. Plaintiff's claims for violation of the TCPA against Defendants, and the resulting injuries caused to Plaintiff by Defendants' advertising and telemarketing messages (which include, *inter alia*, the violation of statutorily conferred substantive rights and the invasion of Plaintiff's privacy) arose in substantial part from Defendants' direction of those messages into Florida.

15. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because Defendants reside in this district. Venue is also proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' actions and omissions which gave rise to the claims asserted in this action occurred here.

## FACTUAL ALLEGATIONS

16. The Panthers operate a National Hockey League team.

17. The Panthers, through the efforts of the Executives and others, developed and implemented advertisement and telemarketing campaigns that aimed to send advertisements and telemarketing text messages to consumers' wireless telephones without first obtaining the consumers' prior express consent.

18. The Panthers, through efforts undertaken at least in part by the Executives, use short code telephone number 64600 to operate their text message marketing campaigns. Messages from Defendants are sent from telephone short code number 64600.

19. The Panthers and the Executives, in their positions as agents for and employees of the Panthers, developed, implemented, and then executed (either personally or by actively overseeing the conduct needed for its execution) "bait and switch" tactics to lure consumers into an onslaught of marketing messages delivered straight to their phones without regard to whether the text recipients are driving, praying, or otherwise seeking solitude in their homes or elsewhere.

20. Schreiber created and expanded the student ticket campaign that is the subject of

this lawsuit. He initiated the Panthers' text message platform, and as part of this direct involvement, he identified and acquired the brand new text message platform sent the marketing text messages that are alleged to violate the TCPA. In fact, Schreiber alone claims responsibility for adding more than 4,000 people to the Panthers' text message promotions list.

21. Brunson is a marketing specialist for the Panthers who is personally involved in developing and sending the messages that are at issue in this case.

22. Generally, Defendants' "bait and switch" tactics convince consumers to sign up to receive one-time discounted hockey tickets. Once Defendants obtain access to consumers' cellular telephone numbers, however, Defendants enroll the consumer into the Panthers' text message marketing campaign. The campaign floods the recipient with advertising and telemarketing text messages.

23. Plaintiff's experience is similar to thousands of others who were repeatedly sent unwanted marketing text messages.

24. Plaintiff learned that he could text the word "STUDENT" to Panthers' short code telephone number 64600 to receive a coupon to attend a Panthers hockey game at a discount.

25. On December 28, 2019, Plaintiff sent the word "student" to short code telephone number 64600.

26. Defendants then captured the incoming data and generated the 0997 Number through the use of a caller identification or an automatic number generation device without notice to Plaintiff.

27. In immediate response to Plaintiff's "student" message, the Panthers automatically sent two text messages to Plaintiff's cellular 0997 Number from short code telephone number 64600, as follows:

> **Florida Panthers: To join, REPLY with your .edu email address. Get up to 5 mesgs/month. Reply HELP for help. Msg&Data Rates May Apply.**
>
> **Each ticket includes parking and rooftop lounge access. Tickets will be delayed delivery. Click the ABOUT tab on the link for more info.**

28. Plaintiff did not "REPLY with [a] .edu email address" . . . "[t]o join."

29. Plaintiff did not send any response to these text messages or otherwise join.

30. Nevertheless, Plaintiff began to regularly receive marketing text messages on his cell phone, each of which advertised the commercial availability of Defendants' sports programming and/or sought to encourage Plaintiff to purchase Defendants' good or services, including Panthers tickets and merchandise.

31. Although Plaintiff did not have a ".edu" email address and did not otherwise do anything to "join" Defendants' mass marketing texting program, Defendants nonetheless sent the following two text messages to Plaintiff's cell phone:

> **FLA Panthers: Last chance for Student Rush tix tonight vs Montreal! Tix are standing room only at The Library & include parking. Tix: http://mobn.it/Rxvw6y0**
>
> **Price will increase periodically on a first come first serve basis. Click the ABOUT tab on the link for more info. Must purchase with valid .edu email address.**

32. These two messages were sent to and received by Plaintiff on a Sunday.

33. On January 3, 2020, Defendants sent another text message to Plaintiff's 0997 Number:

> **FLA Panthers: Welcome back from winter break! Get through the first week back to school and enjoy this extra special offer for $25 lower level tickets t 1/7 vs Arizona Coyotes and 1/9 vs Vancouver Canucks. Each ticket includes parking. The Library is closed for these games. Purchase using valid .edu email address. Tickets: http://mobn.it/QBzDy**

6

34. In an apparent last-minute sales push on January 7, 2020–the day of the Arizona Coyotes game advertised above–Defendants sent another text message to Plaintiff advertising that evening's game:

> **FLA Panthers: Last chance to purchase Student Rush tickets for tonight vs Arizona Coyotes! Each ticket includes parking and is in the lower levels.**

35. On January 9, 2020, Defendants sent another text to Plaintiff's 0997 Number:

> **FLA Panthers: Last chance to purchase Student Rush tickets for tonight vs Vancouver Canucks! Each ticket includes parking and is in the lower level. Tickets: http://mobn.it/7ERNNKO**

36. The following day, January 10, 2020, Defendants texted:

> **FLA Panthers: Celebrate last night's win with a Student Rush offer for 1/12 vs Toronto Maple Leafs! Limited $20 tickets are available until 5pm. Tickets purchased after 5pm will be $25. Each ticket includes parking and access to The Library, an exclusive rooftop lounge. Purchase with a valid .edu email address. Tickets: http://mobn.it/ARXb0r7**

37. Defendants sent Plaintiff another text message on Sunday, January 12, 2020:

> **FLA Panthers: Last chance to purchase Student Rush tix for tonight vs Toronto! Each includes parking & access to rooftop lounge. Tix: http://mobn.it/86Lk21x**

38. On January 14, 2020, Defendants sent Plaintiff another text message:

> **FLA Panthers: Student Rush $25 lower level tickets are on sale now for 1/16 vs LA Kings! For just $10 more, receive popcorn, a hot dog and a fountain drink. Scan your ticket at a concession stand to redeem. All tickets include parking. Tickets: http://mobn.it/wJ6Nw63**

39. The hyperlinks contained within the foregoing messages all redirect the user to a website operated by Defendants offering for sale commercially available tickets to attend Defendants' professional hockey games.

40. Plaintiff did not receive any disclosures from Defendants prior to receiving the foregoing messages on his cell phone.

41. Plaintiff received at least some of the foregoing messages while he was trying to enjoy tranquility at home, and the messages interfered with his domestic peace.

42. Plaintiff may have received additional marketing messages from Defendants, records of which would be in Defendants' possession.

43. Plaintiff is the sole user of the 0997 Number.

44. The complained-of SMS text messages sent to the 0997 Number advertise the commercial availability of Defendants' property, goods, and services.

45. At least one purpose of the complained of SMS text messages sent to the 0997 Number was to encourage Plaintiff's purchase of Defendants' property, goods or services.

46. The source of each of the text messages sent by Defendants to the 0997 Number was 64600, which is an SMS short code owned or leased by or on behalf of Mobiniti, which is Defendants' agent and is used for operating Defendants' text message campaign.

47. All telephone contact by Defendants to Plaintiff at the 0997 Number occurred via an ATDS because the unsolicited telemarketing SMS text messages were sent from 64600, which is a short code telephone number used to message consumers *en masse*, and because the hardware and software used by Defendant to send such messages have the capacity to store, produce, and dial either random or sequential numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Further, the complained of SMS text messages were written in a generic and impersonal manner and fail to provide identifiable characteristics of the intended recipient, thus demonstrating that the text messages were sent to numerous other consumers. In addition, the technology used to disseminate Defendants' text messages has the ability to

immediately and automatically send response messages upon receipt of supposed "keywords" such as the word "student."

48.     Specifically, Defendants' text messages were sent using the Mobiniti platform. The Mobiniti platform is a web-based messaging platform that permits its users, like Defendants, to send thousands of automated messages without any human involvement. As illustrated above, the Mobiniti platform can dial text messages without human intervention by sending automated messages in response to receiving certain keywords such as "student." This function, which Mobiniti refers to as the "auto responder" function," operates by using caller identification computer software to capture the data from the incoming keyword message, generate the incoming cellular telephone number internally from that captured data, store the generated number, and then automatically send a response message–all without a human doing anything. The auto responder function is further programmed to "[r]espond with coupons or promotion immediately after opt-in." *See* https://www.mobiniti.com/auto-responder/ (last accessed January 27, 2020).

49.     Defendants' follow up messages (i.e., those sent after the immediate response messages sent on December 28, 2019) were also sent automatically without human involvement. Specifically, after Mobiniti unilaterally captured the data from Plaintiff's keyword text and generated his phone number using caller identification technology, it generated and stored the number sequentially in its database associated with Defendants. Then, for each message, the Mobiniti platform generates each number sequentially in the order they are stored and transmits them to an aggregator. The aggregator then transmits the corresponding messages to the cell phone carriers affiliated with each message recipient.  Through this process, Mobiniti can disseminate millions of messages per hour without any human involvement. In addition, Mobiniti has the capacity to "[a]utomatically send out a timed, follow up message" after certain events occur, to

"automatically send out messages after a contact joins," and to "[a]utomatically send out time reminders about promotions, contests, etc." https://www.mobiniti.com/drip-messages/ (last accessed January 27, 2020). Alternatively, Mobiniti allows its customers to send automated follow up advertisement texts and to program exactly how long after the first message that the automated follow up message, referred to by Mobiniti as a "drip message," goes out. *Id.*

50. Mobiniti also allows its clients, like Defendants, to schedule their "text message campaigns to go out at any date or time, down to the minute." https://www.mobiniti.com/scheduling/ (last accessed January 27, 2020). Thus, for a non-auto response message, a text message marketer like the Panthers can "[p]lan ahead and forget about it." *Id.*

51. The complained of SMS text messages sent to the 0997 Number were not made for an emergency purpose.

52. The foregoing conduct did not happen on its own. The Executives, who are employed by the Panthers, developed, implemented, and oversaw the Panthers' bait and switch marketing campaign and actually committed the conduct that is alleged to violate the TCPA. The Executives were personally involved in obtaining the license to use the Mobiniti platform, drafting advertisements, creating the accompanying ad graphics, and sending the offending messages; all to lure consumers into a recurring automated text marketing campaign.

53. Defendants' SMS text messages invaded Plaintiff's privacy, intruded upon his seclusion and solitude, constituted a nuisance, and wasted his time by requiring him to interact with and/or delete the messages. Further, Defendants' SMS text messages caused Plaintiff to incur tangible harms such as loss of cell phone battery life and financial losses in requiring him to recharge his phone. Indeed, because a cell phone battery can only be recharged a certain number

of times before becoming obsolete, Defendants' messages depreciated the value of Plaintiff's cell phone. In addition, each text message that Plaintiff received from Defendants took up more than 100 bytes of his cell phone's finite amount of memory capacity.

54.     In addition, Defendants' SMS text messages constituted a temporary electronic intrusion upon Plaintiff's cell phone because receiving Defendants' messages is akin and comparable to using a minute (or more) of fax machine time. Indeed, incoming text messages temporarily consume the receiving device and prevent the recipient's full utilization of the phone's functions while messages are being received. For example, when a text message is received, most phones, including the Plaintiff's, automatically generate a "pop-up" that informs the user that a message has been received and takes up at least part of the screen. This placement of a notification on the phone's screen remains there until physically removed by the user. Of course, this causes the user to lose the opportunity to use the cell phone for other legitimate pursuits.

55.     Plaintiff has no reason to believe, that absent a Court Order, that Defendant would voluntarily stop violating the TCPA.

## CLASS ACTION ALLEGATIONS

56.     Plaintiff brings this lawsuit as a class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3).  The "Class" that Plaintiff seeks to represent is comprised of and defined as:

> **All persons within the United States who received more than one (1) SMS text message on their cell phone, sent by or on behalf of any Defendant.**

57.      Excluded from the Class are Defendants, any entity in which any Defendant has a controlling interest (or which has a controlling interest of any Defendant) and any of Defendants' legal representatives, assigns, or successors.  Also excluded is any judge presiding over, or attorney

making an appearance in, this case and any member of any such judge's or attorney's immediate family. Members of the Class are referred to as "Class Members."

58. Plaintiff reserves the right to modify the definition of the Class or at any appropriate time to seek certification with respect to any particular issues or to add one or more subclasses.

59. Plaintiff and all Class Members have been impacted and harmed by the acts of Defendants.

60. Plaintiff seeks injunctive relief and monetary damages on behalf of himself and the Class.

61. This action may properly be brought and maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3). This class action satisfies the numerosity, typicality, adequacy, commonality, predominance and superiority requirements.

62. Upon application by Plaintiff's counsel for certification of the Class, the Court may also be requested to utilize and certify issue classes or subclasses in the interests of manageability, justice, and/or judicial economy.

63. <u>Numerosity</u>. The number of persons within the Class is substantial, believed to amount to thousands of persons dispersed throughout the United States. It is therefore impracticable to join each member of the Class as a named plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impracticable. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

64. <u>Typicality</u>. Plaintiff received from Defendant at least two SMS text messages that were sent via an ATDS without providing his prior express consent to receive text messages via an ATDS and also without providing his prior express written consent to receive advertisement or

telemarketing text messages via an ATDS. Defendants' text message program operates uniformly and interacts with all users in identical fashion pursuant to pre-programmed computer code through the Mobiniti platform and, therefore, Plaintiff's claims are typical of those of the other Class Members he seeks to represent, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class Members he seeks to represent. Plaintiff and all Class Members have been impacted by, and face continuing harm out of, Defendants' violations and/or misconduct as alleged herein.

65. <u>Adequacy</u>. As Class representative, Plaintiff has no interests that are adverse to, or conflict with, the interests of the absent Class Members and is able to fairly and adequately represent and protect the interests of the Class Members. Plaintiff has raised viable claims of the type reasonably expected to be raised by the Class Members and will vigorously pursue those claims. If necessary, Plaintiff may seek leave to amend this Complaint to add additional representatives of the Class or assert additional claims.

66. <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by experienced, qualified, and competent counsel committed to prosecuting this action. These attorneys are experienced in handling complex class action claims, including class actions alleging violations of the TCPA.

67. <u>Commonality and Predominance</u>. There are well-defined common questions of fact and law that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class Member to Class Member and may be determined without reference to the individual circumstances of any class member, include (but are not limited to) the following:

   a. Whether Defendants transmitted or caused to be transmitted SMS text messages to

        Class Members' cell phones;

   b.  Whether Defendants' text messages were sent to Class Members using the Mobiniti platform;

   c.  Whether the SMS text messages that Defendants transmitted or caused to be transmitted to Class Members' cell phones contained advertisements or constituted telemarketing;

   d.  Whether Defendants transmitted or caused to be transmitted SMS text messages to Class Members' cellular telephones using an ATDS;

   e.  Whether Defendants can demonstrate that they uniformly obtained Plaintiff's and each Class Members' prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8)) to send the complained of text messages;

   f.  Whether Defendants' complained of conduct was knowing and/or willful, and;

   g.  Whether Defendants and/or any of its affiliates, subsidiaries, or agents should be enjoined from engaging in such conduct in the future.

68.  <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable. Even if Class Members could afford to pursue individual litigation, the court system could not. It would be unduly burdensome for the courts preside over the individual litigation of numerous cases arising from the same facts. Individualized litigation also presents the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all the issues presented herein, presents few management difficulties, conserves the resources of the parties and

of the court system and protects the rights of each Class Member. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class Members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are relatively small, particularly when compared to the substantial time and cost investment required to prosecute such claims. Management of these class claims is likely to present significantly fewer difficulties than are presented in many individual claims because the text messages at issue were sent to cell phones, were all automated, and the Class Members, by definition, did not provide the prior express written consent required under the statute to authorize such text messages to their cell phones. The Class Members can be readily located and notified of this class action through Defendants' records and, if necessary, the records of cellular phone providers.

69. Additionally, the prosecution of separate actions by individual Class Members may create a risk of multiple adjudications that would dispose of the interests of other members of the Class who are not parties to such adjudications. This would substantially impair or impede the ability of such nonparty Class Members to protect their respective interests. The prosecution of individual actions by Class Members could further establish inconsistent results and/or establish incompatible standards of conduct for Defendant.

70. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief for the Class appropriate.

71. Moreover, the TCPA violations complained of herein are likely to continue in the future if an injunction is not entered.

## CAUSE OF ACTION
## VIOLATION OF THE TCPA (47 U.S.C. § 227)

72. The foregoing acts and omissions constitute violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

73. Defendants are jointly and severally liablr because each was directly involved in developing, implementing, executing, participating in, and overseeing the day-to-day operations of Defendants' bait and switch text marketing campaign.

74. Defendants made calls to Plaintiff's and the Class Members' cell phones using an ATDS.

75. Because of the Defendants' violations of 47 U.S.C. § 227, Plaintiff and all Class Members are entitled to, and seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

76. Plaintiff and all Class Members are also entitled to, and seek, an award of $500.00 in statutory damages for each SMS message transmitted in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3).

77. Plaintiff and Class Members also seek an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

Plaintiff prays for relief and judgment in his favor, as follows:

A. Injunctive relief prohibiting Defendants' violations of the TCPA in the future;

B. As a result of the Defendants' violations of 47 U.S.C. §227(b)(1), Plaintiff seeks for himself and each Class Member $500.00 in statutory damages for each and every violative SMS text message for which all Defendants shall be jointly and severally liable;

C. As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself and each Class Member treble damages, as provided by the

statute, of up to $1,500.00 for each and every violative SMS text message for which all Defendants shall be jointly and severally liable; and

   D. An Order certifying this action to be a proper class action pursuant to Fed. R. Civ. P. 23, establishing appropriate Class and any additional subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing Plaintiff's counsel as counsel for the Class.

## DEMAND FOR JURY TRIAL

On behalf of himself and the Class, Plaintiff demands a jury trial.

## RESERVATION OF RIGHT TO AMEND

Plaintiff, on behalf of himself and the Class, hereby explicitly reserves the right to amend this Complaint for any proper purpose, including specifically to add claims for violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et. seq.*, and/or to add additional corporate executives of the Panthers who personally and actively participated in or oversaw the violative conduct alleged in this action, including, without limitation: Douglas A. Cifu (Panthers' managing member), Matthew Caldwell (Panthers' president and CEO), Amanda Cifu (Panthers' director of marketing), Zachary Sattaur (Panthers' marketing manager), and Amanda Wasserman (Panthers' digital marketing manager).

Dated: January 27, 2020				Respectfully submitted,

					CAREY RODRIGUEZ
					MILIAN GONYA LLP
					1395 Brickell Avenue, Suite 700
					Miami, Florida 33131
					Telephone: (305) 372-7474
					Facsimile: (305) 372-7475

					By: */s/ Ruben Conitzer*
					David P. Milian (Fla. Bar No. 844421)
					*dmilian@careyrodriguez.com*
					Ruben Conitzer (Fla. Bar No. 100907)
					*rconitzer@careyrodriguez.com*
					*ecf@careyrodriguez.com*
					Juan J. Rodriguez (Fla. Bar No. 613843)
					*jrodriguez.@careyrodriguez.com*
					*cperez@careyrodriguez.com*
					*Counsel for Plaintiff Eric Mittenthal*